UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JAMES E. MILLER, JR.,

        Plaintiff,

        v.                   Case No. 03-C-0987

ARTHUR L. JONES, Police Chief,
CITY OF MILWAUKEE,

        Defendants.

**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT [DOC. NO. 72] AND SCHEDULING A STATUS CONFERENCE**

Plaintiff, James E. Miller ("Miller"), a former Milwaukee Police Department officer, brought suit against Defendants Arthur L. Jones ("Jones"), former Chief of Police of the Milwaukee Police Department,[1] and the City of Milwaukee alleging civil rights violations pursuant to 42 U.S.C. § 1983. Miller claims that the defendants retaliated against him after he exercised his right to free speech under the First Amendment. After the close of discovery, the defendants moved for summary judgment. The district court, Judge Thomas Curran, denied the motion on March 31, 2005. The U.S. Court of Appeals for the Seventh Circuit affirmed the district court's decision on April 17, 2006. *See Miller v. Jones*, 444 F.3d 929 (7th Cir. 2006).

Before this court is the defendants' renewed motion for summary judgment. The defendants' allege that recent decisions by the U.S. Supreme Court, issued after the Seventh Circuit's opinion in this case, constitute an intervening change

---

[1] At all times relevant to this law suit, Jones was the Chief of Police of the City of Milwaukee and had the authority to transfer officers within the police department. (Compl. ¶ 2.)

in controlling law and justify granting their renewed motion. However, for the reasons discussed below, the motion will be denied.

BACKGROUND

The facts of this case have not changed since the earlier denial of summary judgment. They are summarized below.

From 1992 until 2003, Miller was a Milwaukee Police Department ("MPD") officer assigned to the Community Services Division ("CSD"). During that time, he worked with the Police Athletic League ("PAL"). (Compl. ¶ 1.) By offering educational and recreational activities, PAL provides opportunities for police officers to interact in a positive environment with young people in the community. (*Id.* ¶¶ 5-6.) PAL is a nonprofit corporation established under Wisconsin law, and while it receives in-kind labor from MPD officers, MPD provides no funding. (*Id.* ¶ 6.) PAL is controlled by a board of directors made of MPD officers and private citizens of the community. (*Id.* ¶ 7.)

In 1992, Miller was approved by the PAL Board to serve as executive director of PAL. (*Id.* ¶ 9.) As executive director, he was responsible for supervising, controlling, and directing the organization's programming and finances. Further, Miller was responsible for the PAL workforce and had authority to hire, fire, transfer, and promote PAL employees. (*Id.* ¶ 11.) By 1997, Miller became treasurer of PAL also. (Miller Dep. at 91-92.) In that position, he was responsible for maintaining PAL financial records, depositing moneys, supervising the disbursement of funds, and requesting financial audits of PAL. As executive director and treasurer, Miller reported to the PAL

2

Board and served as a member of the Board. (Harris Dep. at 14; Joint Pretrial Report at 2, 6.)

In 1997, PAL undertook to build its own facility. (Joint Pretrial Report at 6.) Between 1997 and 2002, PAL raised funds, established a building committee, and developed construction plans. (*Id.*) Miller oversaw each step of this process, executing contracts, serving on the building committee, and directing construction finances. (*Id.*)

In 2002, Chief Jones began discussing collaboration between PAL and the Boys and Girls Club. (Comp.l ¶ 13.) On March 22, 2002, PAL Board Chairman Robert Harris informed the Board of the proposed collaboration. (*Id.* ¶ 14.) Miller, Harris, and members of the Board reviewed the proposed collaboration, in which the Boys and Girls Club would provide $500,000 to PAL to use PAL facilities, support staff salaries, and cover certain expenses. However, Miller had reservations about collaborating with the Boys and Girls Club, reasoning that with the much larger Boys and Girls Club operating the facility, the purpose of PAL—police officer interaction with young people in the community—would be defeated. (Compl. ¶ 15-16.) Further, Miller expressed concern that while the Boys and Girls Club had offered to cover some staffing costs, it had not offered to cover outstanding construction expenses. (*Id.*)

In a letter to Jones, Chairman Harris stated that the proposed collaboration with the Boys and Girls Club likely violated PAL's national bylaws and that no one person, including Jones, could bind the organization without full Board approval. (*Id.* ¶ 15.) Harris and board of director member Robert Zigman later met with Jones and informed him that they and Miller opposed the merger. (Joint Pretrial Report at 2; Zigman Dep. p. 26.) In a later meeting called by Jones with the officers on the PAL

3

Board, Jones reprimanded Miller regarding his opposition to the merger. (Joint Pretrial Report at 2.) Following these events, Jones, while not attending any PAL Board meetings in the past, attended PAL Board meetings on April 9, April 19, and May 3, 2002. (Joint Pretrial Report at 2.)

At an April 19, 2002, PAL Board meeting, Jones told the Board that Miller should be demoted from executive director due to concerns that, despite Miller's service over the previous eleven years, an MPD officer in charge of PAL's finances and employment exposed the city to increased liability. (See Harris Dep. at 40-41.) Jones urged that PAL create a committee to study the proposed collaboration with the Boys and Girls Club. At Board meetings during the summer of 2002, Miller continued to express opposition to the proposed collaboration and ultimately voted to end continued dialogue with the Boys and Girls Club. (See Harris Dep. at 40; Joint Pretrial Report at 2-3.)

On July 8, 2002, Jones directed Deputy Chief Schunk to remind Miller that it was Jones who was responsible for setting MPD policy and how MDP officers should interact with PAL. (Schunk Dep. at 34.) On August 30, 2002, Miller became the subject of an MPD Internal Affairs Division investigation for failing to treat as confidential certain information discussed in a conversation with Harris concerning PAL. (Joint Pretrial Report at 3). Jones informed the Board on September 27, 2002, that Miller was to be removed as executive director and demoted to program director. Additionally, Jones directed that no MPD personnel were to work with PAL until the Board created a new job description for Miller, which effectively halted operations at PAL. (Jones Dep. at 89-90.) Miller's new position was officially established on November 15, 2002, and in his

4

new role as program director, Miller was no longer permitted to serve on the PAL Board. (Compl. ¶ 29.)

Miller filed a complaint against Jones with the Milwaukee Fire and Police Commission on January 6, 2003. (*Id.* ¶ 33.) In the complaint, Miller alleged that Jones coerced the PAL Board to act on his demands, engaged in retaliatory acts, and interfered unlawfully with the private business of another. Also, during that month, Miller raised concerns to Harris about certain financial transactions that implicated PAL's attorney, the construction contractor, and Wisconsin State Senator Gary George, who was a PAL Board member and supported Jones' proposal for collaboration (Harris Dep. at 79-80; Joint Pretrial Report at 3.) Harris in turn expressed these concerns to the PAL Board. (Harris Dep. at 82.)

In 2003, Miller's supervising officer, Captain Davidoski, set a policy that required Miller to file periodic activity reports. Later, Davidoski complained to Deputy Chief Schunk that Miller's was not properly fulfilling the reporting requirements. (Davidoski Dep. at 99.) On May 27, Miller was transferred from CSD to District No. 4 patrol duty. (Compl. at 35.) The new program director at PAL, Sergeant Banks, assumed all of the duties Miller had performed previously as executive director. (Compl. ¶ 41.) On October 10, 2003, Miller filed a complaint in district court pursuant to 42 U.S.C. § 1983 asserting that Jones violated his First Amendment rights by retaliating against him (Miller) for vocal opposition to the proposed merger and criticism of financial transactions relating to construction of new PAL facilities.

The defendants moved for summary judgment following the close of discovery. On March 31, 2005, the district court denied the defendants' motion. The

5

U.S. Court of Appeals for the Seventh Circuit affirmed the district court's decision on April 17, 2006. The defendants' renewed motion for summary judgment is now before the court.

ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court may consider the depositions, answers to interrogatories, admissions, pleadings and affidavits that are part of the record. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). In analyzing whether a question of fact exists for the purposes of summary judgment, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A district court "may, in its discretion, allow a party to renew a previously denied summary judgment motion . . . particularly if good reasons exist." *Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir. 1995) (citing *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 913 (7th Cir.1973)). A renewed summary judgment motion "is appropriate especially if one of the following grounds exists: '(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice.'" *Id.* (citing *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part, rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987)). The decision to permit a party to move forward with a renewed motion for summary judgment lies in the discretion of the trial court. *Whitford*, 63 F.3d at 530.

6

Here, the defendants assert that the U.S. Supreme Court's decision in *Garcetti v. Caballos*, 126 S.Ct. 1951 (2006), issued after the Seventh Circuit affirmed the district court's denial of summary judgment in this case, established a new legal standard for courts to assess whether employee speech falls under First Amendment. The new standard contradicts the Seventh Circuit's analysis. Thus, according to defendants, *Garcetti* constitutes an intervening change in controlling law and justifies their renewed motion for summary judgment. In addressing this argument, the court looks to the Seventh Circuit's decision in *Miller v. Jones* to determine if it conflicts with the U.S. Supreme Court's decision in *Garcetti*.

In this case, the district court and the Seventh Circuit confronted the question of whether Jones, as chief of police, was entitled to qualified immunity in this action. The first aspect of the qualified immunity analysis requires the court to determine if the employer violated the employee's right to free speech protected by the First Amendment. *Miller*, 444 F.3d at 934. It is this aspect of the analysis that the defendants challenge in this motion.[2]

To answer the question of whether Miller's speech is protected, the Seventh Circuit looked to *Connick v. Myers*, 461 U.S. 138 (1983), which noted that "when an 'employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a

---

[2] The second aspect of the qualified immunity analysis requires the court to determine if the violated constitutional right was "clearly established at the time of the alleged violation." 444 F.3d at 934. As discussed later in this order, *Garcetti* does not address this factor and this court refuses to reconsider the issue because no other law or facts justify revisiting the Seventh Circuit's analysis.

7

public agency . . . .'" *Miller*, 444 F.3d at 935 (quoting *Connick,* 461 U.S. at 147). "To determine whether the employee's speech was that of a citizen on a matter of public concern, we look to the content, form, and context of the statement." *Id.* at 935 (citing *Connick,* 461 U.S. at 147-48; *Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005)). "Where . . . the statement arose from a discretionary act involving independent judgment and action, the speech is more likely to suggest the employee spoke as a citizen . . . ." *Id.* at 937. However, statements made "in the course of the 'routine discharge of assigned functions, where there is no suggestion of public motivation' do not indicate that the employee set out to speak as a citizen on matters of public concern." *Id.* at 937 (quoting *Spiegla v. Hull* (*Spiegla I*), 371 F.3d 928, 939 (7th Cir. 2005)).

Applying this standard to Miller's comments, the court found that Miller was speaking as a citizen upon matters of public concern and therefore his speech was protected under the First Amendment. The court stated that "Miller's opposition to the proposed merger may hardly be said to be a routine discharge of his duties as an officer with the MPD Community Services Division. . . . While he may have been required to undertake this review, he was not required to recommend a particular outcome." 444 F.3d at 937-38. Regarding Miller's 2003 concerns regarding financial irregularities relating to construction of the new facility, the court noted "to claim this speech was entirely within the scope of his job duties sweeps much too broadly." *Id.* at 939 (quoting *Spiegla I*, 371 F.3d at 939).[3]

---

[3] The Seventh Circuit in *Miller* concluded that the form, content, and context of Miller's speech demonstrated that it was "upon a matter of public concern," and the defendants do not challenge that part of the holding in this motion. *See Miller*, 444 F.3d at 936.

8

Forty-five days after the Seventh Circuit's decision in *Miller*, the Supreme Court issued its decision in *Garcetti v. Ceballos*. In *Garcetti*, the Court considered a First Amendment retaliation claim by deputy district attorney Ceballos who drafted a memorandum to his supervisors expressing concerns that an affidavit used to secure a warrant was defective. After considering Ceballos concerns, the district attorney's office decided to go forward with the prosecution. 126 S.Ct. at 1956. In his suit, Ceballos claimed that he was transferred and denied a promotion based on his comments. The Court found that Ceballos' drafted of the memorandum "pursuant to his duties as a calendar deputy" in the district attorneys' office. *Id.* at 1959-60. Holding that Ceballos speech was unprotected, the court stated: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1957. The Court left open the definition of "official duties," instructing instead that "the inquiry is a practical one." *Id.* at 1961 ("We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate.").

Following the Supreme Court's decision in *Garcetti*, the Seventh Circuit reformulated part of its analysis when considering a public employee's First Amendment rights. "*Garcetti* made clear that public employees speaking pursuant to their *official duties* are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech." *Spiegla v. Hull* (*Spiegla II*), 481 F.3d 961 965 (7th Cir. 2007) (emphasis added). Therefore, the "threshold inquiry [after *Garcetti*] is whether the employee was speaking as a citizen;

9

only then do we inquire into the content of the speech." *Id.* at 965 (citing *Mills v. City of Evansville*, 452 F.3d 646, 647-48 (7th Cir. 2006).

Applying *Garcetti*, the Seventh Circuit in *Mayer v. Monroe County Community School District* noted that teachers speaking in class on issues not approved by the school board are speaking within their official duties because students are a captive audience and the school district hires teachers to speak to students. 474 F.3d 477, 479 (7th Cir. 2007). In *Sigsworth v. City of Aurora*, the court held that a narcotics enforcement officer's complaints to his superior that members of his task force may have tipped off targets of an impending drug raid was speaking pursuant to his official duties. 487 F.3d 506, 508, 511 (7th Cir. 2007). The court noted that the officer's speech was unprotected because "he was doing what was expected of him as a member of a task force charged with organizing and overseeing the planning and execution of warrants." *Id.* at 511.

In *Spiegla v. Hull* (*Spiegla II*), 481 F.3d 961, the Seventh Circuit reexamined a case, *Spiegla v. Hull* (*Spiegla I*), 371 F.3d 928, in which it held that the speech at issue was protected under pre-*Garcetti* circuit precedent. At issue in the case were comments made by Spiegla, a corrections officer assigned to inspect vehicles entering the facility, to the assistant superintendent critical of her immediate supervisor. Spiegla reported that her immediate supervisor prohibited her from inspecting the vehicle of another corrections officer despite official policy requiring her to inspect every vehicle. *Spiegla II*, 481 F.3d at 963. In *Spiegla II*, the court rejected its previous holding in *Spiegla I* and found that Spiegla was speaking "pursuant to her responsibility as a correctional officer to inform her superiors of a possible breach in

10

prison search policy . . . . In doing so, she spoke as an employee, not a citizen, because ensuring compliance with prison security policy was part of what she was employed to do." *Id.* at 966.

In *Mills v. City of Evansville*, the statements at issue were made by a police officer while that officer was "on duty, in uniform, and engaged in a discussion with her superiors." 452 F.3d 646, 648 (7th Cir. 2006). In the discussion, Mills criticized the chief of police's plan to shift some officers from crime prevention to active patrol. *Id.* at 647. The conversation occurred just outside of the chief's office where they had all met to discuss the plan. *Id.* at 648. Applying *Garcetti*, the court held that Mills' comments were made within her official duties as an officer. The court observed that the chief of police "must be able to change assignments in response to events (including statements) that reveal whether employees with be faithful agents of the decisions made by politically accountable managers." *Id.* at 648.

Alternatively, in *Fuerst v. Clarke*, the Seventh Circuit held that public statements made by a deputy sheriff against personnel policies of the sheriff fell outside the deputy's official duties and were thus protected speech. 454 F.3d 770, 774 (7th Cir. 2006). In that case, the deputy, Fuerst, who had run against the sheriff unsuccessfully and served as president of the local deputy sheriff's union, made statements against the sheriff's personnel policies. *Id.* at 772. Later, these comments were reported in a newspaper, and the sheriff admitted that he passed the deputy over for promotion because of these comments. *Id.* Based on these facts, the court found that the deputy's "duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer [under] the Supreme Court's recent ruling in *Garcetti v.*

11

*Ceballos.*" *Id.* at 774. Instead, the court found that the deputy's statements were made in his capacity as a union representative. *Id.*

Turning to the motion at hand, the defendants argue that Miller's comments opposing collaboration between PAL and the Boys and Girls Club were made pursuant to his official duties as a police officer assigned to PAL; therefore, his comments are not protected speech. The defendants rely on *Garcetti* and post-*Garcetti* Seventh Circuit cases to support their position that the Seventh Circuit's analysis in Miller conflicts with controlling law. While the defendants are correct that the Seventh Circuit based its opinion in *Miller* on a now partially invalid standard, *see Spiegla II*, 481 F.3d at 695 (noting that the standard for First Amendment protection was changed by *Garcetti*), that does not necessarily mean Miller's speech is unprotected.

Because of Miller's affiliation with PAL, his duties as a police officer assigned to PAL are in many ways disconnected from the operations of the police department. It is true that as an MPD officer assigned to the Community Services Division, Miller's duties included serving as executive director, and later program director, of PAL. Further, as noted by the defendants, the operations of PAL were of concern to MPD. However, PAL was created to operate not as a creature of the MPD, but as an independent corporation established under Wisconsin law, financed through outside operations, and supported by voluntary assistance from the officers of MPD. To this end, the roles of the executive director and the program director were created and defined, not by the chief of police, but by the independent PAL Board of Directors. As such, the chief of police was not directly responsible for the operation and policies of PAL, which makes it difficult to conclude that Miller, as executive director in charge of

12

overall operations at PAL and a member of the PAL Board, must have been acting within his official duties as a police officer when commenting on proposed PAL policies that could not be implemented by MPD—the PAL Board, not the MPD, set PAL policy.

As PAL executive director and a member of the PAL Board in 2002, Miller worked side by side private members of the community in developing and debating PAL policies, including the proposal to collaborate with the Boys and Girls Club. He was asked by other Board members for his opinion on these matters. These considerations distinguish Miller's situation from those in *Garcetti*, *Mills*, *Spiegla*, and *Sigworth*. In *Garcetti*, *Spiegla*, and *Sigworth*, the speech at issue focused on communications between the speaker and a supervisor on work-related misconduct that could be assessed and remedied as part of the internal operations of the given agency. For example, in *Sigworth*, the speaker was reporting on members of his task force because an official agency "policy of cooperation" required him to do so. *Sigworth*, 487 F.3d at 511. Likewise, the comments and memorandum at issue in *Garcetti* concerned the speaker's opposition to his superior's decision to move forward with a specific prosecution—a matter solely within the authority of the district attorney's office. *Garcetti,* 126 S.Ct. 1951. In *Mills*, the comments at issue were made by the speaker to her immediate superiors criticizing internal police staffing policies.

Unlike these situations, Miller's comments were expressed to and shared by members of the PAL Board, including Harris and Zigman, and concerned the future operation and existence of an independently financed, nonprofit organization.[4] As

---

[4] A different conclusion may be reached in this case if it was assumed that Miller had expressed to his superiors at the MPD opposition to how Jones' assigned officers to work with PAL. It is not disputed that Jones had the authority to transfer officers within the MPD and was able to control how

13

such, Miller's comments are more reflective of the "kind of activity engaged in by citizens who do not work for the government" and thus protected under the First Amendment. *See Garcetti*, 126 S.Ct. at 1961. That he was speaking on matters related to his professional employment is not of concern. *See Id.* at 1959 ("The First Amendment protects some expression related to the speaker's job. As the Court noted in Pickering: 'Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.'" (citations omitted)). This conclusion is further supported by indications that Miller was investigated by the MPD Internal Affairs Division for "failing to treat as confidential the business of the department; [and] speaking on behalf of the department without authorization from the Chief . . . in reference to a conversation you had with Bob Harris concerning the PAL program."[5] *Miller*, 444 F.3d at 933.

In addition, the defendants' argument that Jones, like the defendant in *Mills*, had the authority to transfer Miller if he felt Miller would not be a "team player" supportive of his collaboration proposal is not applicable under the circumstances. In contrast to the defendants in *Mills*, Jones was not proposing an internal MPD personnel

---

MPD officers interact with PAL. However, Miller's comments at issue in this case had to do with a proposed collaboration between PAL and the Boys and Girls Club, a proposal dealing with the fate of PAL and subject to the Board's review and approval.

[5] The defendants argue that the possibility that an employer may discipline an employee for speaking is "not a telling sign of whether the speech was part of the employee's 'official duties.'" (Defs.' Rep. Br. in Supp. of Renewed Mot. for Summ. J. at 3.) To the contrary, the threat of employer discipline for *speaking outside of ones duties* on a matter of public concern is telling. It is this speech that is protected under *Garcetti* and *Pickering*.

14

plan, and, regardless of Miller's comments, he did not have a legitimate expectation that his proposed policy—collaboration between PAL and the Boys and Girls Club—would be carried out. *Contra Mills*, 452 F.3d at 648 ("If a chief of police can't fire or demote sergeants whose views imply less than enthusiastic support, what can he do to *ensure faithful implementation*?" (emphasis added)) Such a decision required consideration and approval by the PAL Board, of which Miller was a voting member.

In addition to Miller's comments regarding the proposed merger, defendant's argue that Miller's comments in 2002 concerning financial transactions implicating PAL's attorney, their construction contractor, and Senator George fall within his official duties as a police officer assigned to PAL. For the same reasons just described, this argument is not convincing.

It is true that as executive director, Miller was responsible for managing the operations and finances associated with the construction of the new PAL facilities. However, as discussed above, Miller's role as executive director and as a board member of PAL placed Miller in the unique situation of serving as a police officer but reporting to an independent board of directors made up in part by private citizens and himself. Further, the defendants are not able to argue Miller, like the plaintiff in *Mills*, was merely opposing internal police management decisions—Miller's comments concerned a financing scheme that harmed PAL but was supported by a PAL Board

15

member and state senator who was later convicted of fraud charges.[6] (*See* Compl. ¶ 31-32.) Without more, this court is not willing to reject the Seventh Circuit's holding.

With regard to Miller's 2003 statements concerning financial transactions implicating PAL's attorney, PAL's construction contractor, and Senator George, after Miller was designated PAL's program director, the defendants appear to accept that such statements were made outside of his official duties as program director.[7] Instead, the defendants assert that there is no causal connection between Miller's statements and his transfer. (Defs.' Br. in Supp. of Renewed Mot. for Summ. J. at 18.) According to the defendants, this argument is appropriate on renewed motion for summary judgment, because the Seventh Circuit committed "clear error" by finding, without adequate support in the record, that Miller relayed his concerns to Chairman Harris. (Defs.' Reply Br. in Supp of Renewed Mot. for Summ. J. at 10-11.) Specifically, the defendants appear to take issue with the Seventh Circuit's finding that "Miller brought these concerns [about certain financial transactions implicating PAL's attorney, their construction contractor, and State Senator George] to the attention of Chairman Harris,

---

[6] In his complaint, Miller ties Senator George to Jones because George supported Jones' proposed collaboration between PAL and the Boys and Girls Club. (Compl. ¶ 32.) George was later indicted on many counts of receiving kickbacks, including some related to PAL, and ultimately plead guilty to defrauding the United States in violation of 18 U.S.C. § 371. *See United States v. George*, No. 03-CR-259, 2006 U.S. Dist. LEXIS 31027 (E.D. Wis. May 3, 2006).

[7] The Seventh Circuit's discussion of these comments is applicable post-*Garcetti*. The Seventh Circuit found that Miller's duties as program director were detailed in the job description approved by Jones and the PAL Board. As to his comments made in 2003 relating to financial irregularities and contractor performance,

> we cannot find that Miller's subsequent and consistent reporting on these issues was wholly within the scope of his duties. . . . [W]here Miller was instructed to act through the Managing Director and '[m]aintain confidentiality of all information" he chose instead to bring his concerns to his supervisors in both PAL and the MPD. To claim this speech was entirely within the scope of his job duties and not a matter of public concern "sweeps much too broadly."

*Miller*, 444 F.3d at 938 (internal citations omitted).

16

who then raised them with the Board." *Miller*, 444 F.3d at 933. The appellate court then noted that Miller was not acting within his duties as program director when he "chose instead to bring his concerns to his supervisors in both PAL and the MPD." *Id.* at 938. The defendants argue that the record does not provide enough support for this conclusion, and therefore the court must grant summary judgment in order to prevent "manifest injustice."

The defendants raised the argument that no causal connection existed between Miller's comments and Jones' allegedly retaliatory actions in their first effort at summary judgment. (*See* Defs.' Rep. Br. in Supp. of Mot. for Summ. J. at 7.)[8] The trial court and the Seventh Circuit examined the record and addressed the defendants' argument. No new facts or controlling law is offered in support of this claim; therefore, at this stage in the proceedings, the defendants' argument is rejected.

Lastly, the defendants submit that if this court finds that *Garcetti* does not require rejecting the Seventh Circuit's holding in *Miller*, they are nonetheless entitled to qualified immunity as Miller's First Amendment rights at the time of Jones allegedly retaliation were "not clearly established" pursuant to *Saucier v. Katz*, 533 U.S. 194 (2001). Again, the defendants present no new controlling law or facts to justify this assertion. The district court and the Seventh Circuit addressed this issue and rejected the defendants' claim. *See Miller*, 444 F.3d at 939 (finding that the law at the time of Miller's transfer was clearly established and that Jones was on notice that retaliatory transfer of public employees for speech protected by the First Amendment is subject to

---

[8] Defendants argue that in their previous attempt at summary judgment, they focused on statements made to Sergeant Banks and not Harris. (See Defs.' Reply Br. in Supp. of Renewed Mot. for Summ. J. at 10-11.)

17

suit under § 1983). Therefore, this court refuses to readdress this question on renewed motion for summary judgment.

Now, therefore,

IT IS ORDERED that defendants' renewed motion for summary judgment is denied.

IT IS FURTHER ORDERED that the parties shall appear for a status conference on **October 26, 2007, at 9:30 a.m.** in Courtroom 222, U. S. Courthouse, 517 East Wisconsin Ave., Milwaukee, Wisconsin.

Dated at Milwaukee, Wisconsin, on this 5th day of October, 2007.

BY THE COURT:

s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
United States District Judge